Thomas A. SCHULZ, Patricia L. Schulz, Curtis S. Schulz, ppa, Katy A. Schulz, ppa By their Father and Next Friend, Thomas A. Schulz, Plaintiffs,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Defendant.

Civil Action No. 92–10312–MLW.

United States District Court, D. Massachusetts.

Sept. 25, 1996.

David P. Angueira, Edward M. Swartz, Swartz & Swartz, Boston, MA, for Plaintiffs.

Michael McCormack, McCormack & Epstein, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER ON MOTION TO AMEND ANSWER TO ADD COUNTERCLAIM (# 112)

COLLINGS, United States Magistrate Judge.

### I. INTRODUCTION

The plaintiffs in the instant action, Thomas A. and Patricia L. Schulz, together with their minor children, Curtis S. and Katy A. Schulz, allege that the defendant, Liberty Mutual Insurance Company (hereinafter "Liberty Mutual"), has engaged in conduct constituting unfair and deceptive practices within the meaning of Massachusetts General Laws chapter 93A in that the insurance company purportedly failed to effectuate a prompt, fair and equitable settlement of their claims when liability had become reasonably clear in violation of Massachusetts General Laws chapter 176D, § 3(9)(f). The Court denied Liberty Mutual's motion for summary judgment on January 16, 1996.[1] Liberty Mutual now seeks to amend its answer to add a counterclaim alleging that the plaintiffs engaged in "reverse bad faith"; the plaintiffs oppose.

### II. THE FACTS

The following facts are taken from the Court's Memorandum and Order on Defendant's Motion for Summary Judgement (# 105); citations to the record appear therein. On the morning of May 26, 1989, a truck being driven by one John J. Molnar, Sr. in the course of his duties as an employee of Holmes Transportation, Inc. (hereinafter "Holmes") crossed the median strip on Interstate 495 in Westford, Massachusetts and collided with the plaintiffs' automobile. As a consequence of this accident, each of the plaintiffs suffered personal injuries.

Both Holmes and its insurer, Liberty Mutual, were notified of the accident on the day that it occurred. Two safety representatives of Holmes, Thomas McCain and Peter Ensley, travelled to the scene within a short time of being informed of the accident. As director of safety at Holmes, Mr. McCain con-

---

1. The case has been referred to the undersigned for all purposes pursuant to 28 U.S.C. § 636(c) and the consent of the parties.

ducted an investigation into the circumstances of the event. In a letter dated June 13, 1989, Anne Hutton, a claims adjuster at Liberty Mutual, wrote to Mr. McCain stating "[c]urrently, liability appears to be clear on your driver's part." On or before June 30, 1989, Mr. McCain filed a final report with respect to his investigation and, based upon his findings, opined that the Holmes truck driver had fallen asleep at the wheel, and further determined that the accident was chargeable against Mr. Molnar.

Following the accident, the Schulz family engaged the services of David K. Bamford, Esquire, of New Hampshire to represent them with respect to their claims against the truck driver and Holmes. The staff in Attorney Bamford's office began to work on the Schulzes' case during the summer and fall of 1989. At the outset, Attorney Bamford was informed that Joel Otfinoski of Liberty Mutual was the claims adjuster handling the Schulz matter.

Throughout 1989, Attorney Bamford dealt with Mr. Otfinoski regarding the Schulzes' claims. Records at Liberty Mutual reflect that on November 2, 1989, Mr. Otfinoski noted that "[l]iability is clear." The adjuster who handled the Schulzes' claims after Mr. Otfinoski, Ms. Candace Dow, understood that notation in the file to mean "that Liberty Mutual had established that liability was clear as early as November 2, 1989." During the period when Attorney Bamford was in communication with Mr. Otfinoski, he never made any settlement demands on behalf of the plaintiffs, believing the situation was "too preliminary."

Holmes filed for Chapter 11 bankruptcy on December 15, 1989. On March 1, 1990, the claim of another individual injured in the May 26, 1989 accident, one James Rao, was settled in the amount of $28,750.00.[2] In May of 1990, Candace Dow of Liberty Mutual assumed primary responsibility for handling the Schulzes' claims.

During 1990, Ms. Dow and Attorney Bamford were in contact via telephone and letter, discussing the Schulzes' claims. The relationship between them was cooperative, cordial, open and professional. By letter dated November 29, 1990 to Candace R. Dow, Claims Adjuster at Liberty Mutual, Attorney Bamford made a demand for settlement on behalf of Patricia L. Schulz. A demand letter on behalf of Thomas A. Schulz was sent to Ms. Dow by Attorney Bamford on December 18, 1990. A third demand letter, this one on behalf of Katy Schulz, was forwarded by Attorney Bamford to Liberty Mutual on January 3, 1991. According to Attorney Bamford, there was no reason for the delay in making demands for settlement of the three Schulzes' claims. However, Curtis Schulz was another matter; as of January, 1991, Attorney Bamford was of the view that it would be "premature to discuss settlement" and, hence, no settlement demand was made on his behalf.

According to a November 26, 1991 internal Liberty Mutual document authored by Candace Dow, she was of the opinion that Attorney Bamford's formal demands of $200,000.00 for Thomas Schulz, $200,000.00 for Patricia Schulz, and $30,000.00 for Katy Schulz in settlement of their claims "were very reasonable." Ms. Dow further states in that memorandum that she "had originally requested the following amounts for settlement: Thomas Schulz: $150,000.00, Patricia Schulz: $150,000.00, and Katy Schulz: $25,000.00."

In February of 1991, Julie Hennessy, a Liberty Mutual claim supervisor, requested authority from the Liberty Mutual home office to settle the claims of Thomas, Patricia and Katy Schulz. According to Ms. Hennessy, it was in early March, 1991, that she was advised by the Liberty Mutual office in Worcester, Massachusetts that Holmes had filed for bankruptcy. As soon as Ms. Hennessy and Ms. Dow become aware of the situation, Attorney Bamford was notified that Holmes was involved in Chapter 11 proceedings. As of that time, i.e., March of 1991, Attorney Bamford had not filed a lawsuit on behalf of his clients against either Holmes or its employee, Mr. Molnar.

The documentary record reveals that on or about July 5, 1990, Liberty Mutual filed a

2. There were three automobiles involved in the collision with the Holmes truck on May 26, 1989.

Proof of Claim in the Holmes bankruptcy case in the United States Bankruptcy Court for the District of New Jersey to recover premiums and reserves on insurance policies.

At some point after Attorney Bamford learned of the Holmes bankruptcy, David P. Angueira, Esquire, Massachusetts counsel, was retained to litigate the Schulzes' claims against Holmes and Mr. Molnar. On May 21, 1991, Attorney Angueira filed a civil action, denoted C.A. 91–11454, in the United States District Court for the District of Massachusetts on behalf of the members of the Schulz family against Holmes and its employee. On November 8, 1991, Attorney Angueira wrote a demand letter to Liberty Mutual, notifying the insurance company that,

> In the event you do not promptly provide my clients with a reasonable offer of settlement, it is my intention to file suit directly against Liberty Mutual Insurance Company for violation of M.G.L. c. 176D and 93A.

The instant lawsuit, C.A. 92–10312, was filed on or about February 6, 1992.

On March 6, 1992, the plaintiffs were granted relief from the automatic stay in the Holmes Chapter 11 proceedings by the United States Bankruptcy Court for the District of New Jersey as requested by the motion they had filed on February 10, 1992. Liberty Mutual was advised of this bankruptcy court ruling by letter dated March 9, 1992.

Liberty Mutual made its first settlement offers in the form of structured settlements to the Schulzes on March 26, 1992 after they had obtained relief from the automatic stay. These offers were flatly rejected as "totally inadequate" with the plaintiffs demanding $1,000,000.00 to settle all of their claims. The Schulzes' combined demand of $1,000,-000.00 was reiterated in a letter dated December 8, 1992. Further offers of settlement were made on January 8, 1993 in response to the plaintiffs' December 8th demand letter, but these too were rejected on or about March 4, 1993 with no counter-proposals being advanced.

In accordance with the provisions of Fed. R.Civ.P. 68, on June 25, 1993, proposed orders of judgment were filed in the sum total amount of $425,000.00. Once again the offers

were rejected outright "as totally inadequate"; as of July 2, 1993, the plaintiffs' aggregate demand remained at $1,000,000.00. Following closing argument by plaintiffs' counsel at trial on July 12, 1993, the combined offer of settlement to the plaintiffs was raised to $500,000.00. After the jury charge, Liberty Mutual proffered its final settlement proposals totalling $600,000.00. These settlement offers were declined by the plaintiffs with no counter-proposals being made.

On July 13, 1993, judgment on the jury verdict entered in favor of the Schulzes as against Holmes and Mr. Molnar in C.A. 91–11454 in the following amounts:

|  | VERDICT | INTEREST | TOTAL |
|---|---|---|---|
| Thomas Schulz | $ 48,000.00 | $12,384.00 | $ 60,384.00 |
| Patricia Schulz | $ 55,000.00 | $14,190.00 | $ 69,190.00 |
| Curtis Schulz | $112,000.00 | $28,896.00 | $140,896.00 |
| Katy Schulz | $ 17,000.00 | $ 4,386.00 | $ 21,386.00 |

TOTAL RECOVERY: $291,856.00

The interest figures indicated represent prejudgment interest of twelve percent per annum running from the date of the commencement of the action pursuant to Mass.Gen.L. ch. 231, § 6B.

### III. THE PRESENT MOTION

In the motion presently before the Court, Liberty Mutual seeks leave to amend its answer to the plaintiffs' amended complaint in order to add a counterclaim. Count I of the proposed counterclaim alleges a claim for "reverse bad faith" on the part of the plaintiffs, while Count II alleges a claim under Mass.Gen.L. ch. 231, § 6F for attorneys' fees and costs. The Schulzes oppose the motion primarily on the ground that the proposed counterclaim fails to state a claim under Massachusetts law on the facts of this case.

Although this action was originally filed in 1992, discovery has long since closed, and, as stated earlier, Liberty Mutual's motion for summary judgment has been denied. In addition, the parties have attempted mediation, and the case is presently in a posture either to be tried or to have certain questions certified to the Massachusetts Supreme Judicial Court. At this juncture, Liberty Mutual contends that it should be permitted to amend its answer because the claim that it is alleg-

ing has only recently been acknowledged for the first time by the Massachusetts Appeals Court. Specifically, Liberty Mutual argues that in a decision issued on May 6, 1996, in the case of *Parker v. D'Avolio*, 40 Mass.App. Ct. 394, 664 N.E.2d 858 (1996), the state appellate court "recognized ... the common law concept of reverse bad faith in the context of insurance claims." (Motion # 112 at 1)

In Count I [3] of the counterclaim for which it seeks leave to file, Liberty alleges that:

42. The plaintiffs' refusal to negotiate realistically or to make countersettlement proposals constitutes reverse bad faith.

43. The plaintiffs' failure to make a demand for two years after the date of the accident and then claim delay damages for that time period constitutes reverse bad faith.

44. Filing a complaint against an entity known to be in bankruptcy proceedings in violation of the automatic stay constitutes reverse bad faith.

45. Attempting to obtain a default judgment against an entity known to be in bankruptcy proceedings constitutes reverse bad faith.

*See* # 112, Attachment A at p. 6.

It is important to note that by its motion, Liberty Mutual seeks to add a cause of action whereby it can recover damages from the plaintiffs. This is to be distinguished from asserting the plaintiffs' alleged bad faith as an affirmative defense. Indeed, in their Answers (## 6 and 34) filed previously, Liberty Mutual asserted as its Eighth Affirmative Defense that "[t]he plaintiffs, through their counsel, failed to negotiate their claims in good faith."

### IV. ANALYSIS

In the Parker case, the minor plaintiff brought suit against his landlords for purported violations of the state lead poisoning prevention law. After trial, the jury rendered a verdict for the plaintiff in the amount of $1,250,000; this verdict was not challenged on appeal. When deciding the concomitant claim under Mass.Gen.L. ch. 93A, the judge determined that the defendants had knowingly engaged in bad faith actions in violation of the statute, and, consequently, judgment entered on the chapter 93A claim with the compensatory damage award assessed against the defendants doubled together with interest and attorneys' fees. Unsuccessful on their posttrial motions, the defendants appealed the judge's decision to award multiple damages.

The Massachusetts Appeals Court reversed the judgment of the trial court to the extent that multiple damages and attorneys' fees were granted under chapter 93A. Before the trial judge, the plaintiff had argued, inter alia, that the defendants had acted in bad faith in responding to his demand letter. The appellate court noted that the evidence upon which the plaintiff based his case at trial, both with respect to the severity and permanence of his injuries, was not available to the defendants at the time they offered twenty-five dollars to settle the matter. Addressing the adequacy of the defendants' response, the Appeals Court wrote:

Caution demands that we narrowly construe whether the "demand letter reasonably set forth the acts relied on," and focus on the attendant facts and circumstances as they existed at the time of the demand.

*Parker*, 40 Mass.App.Ct. at 402, 664 N.E.2d at 863–64. It was following this statement that the court dropped the footnote upon which Liberty Mutual relies in asserting its counterclaim; the text of that footnote, in relevant part, reads:

Indeed, case law suggests, in the context of insurance claims, that courts be vigilant to ensure that plaintiffs not engage in "reverse bad faith" conduct. *See Twin City Fire Ins. v. Country Mut. Ins. Co.*, 23 F.3d 1175, 1180 (7th Cir.1994), citing *Transit Cas. Co. v. Spink Corp.*, 94 Cal.App.3d 124, 156 Cal.Rptr. 360 (1979) ("duty of good faith between insured and insurer is a reciprocal one"). Here too, the plaintiff has a reciprocal duty to be straightforward and forthcoming in providing the informa-

---

**3.** Count II of the proposed counterclaim is surplusage, since in their Answers (## 6 and 34), Liberty Mutual seeks seeks an award of attorney's fees and costs pursuant to Mass.Gen.L. ch. 231, § 6F.

tion necessary to the defendant's evaluation of the case. We note with dismay that a supplemental answer to interrogatories was mailed to the defendants one day after the settlement offer was made, fully ten months after the interrogatories were first propounded.

*Parker*, 40 Mass.App.Ct. at 402 n. 9, 664 N.E.2d at 864 n. 9.

Although Liberty Mutual construes the text of this footnote as recognizing a novel, substantive cause of action under Massachusetts law, the Court quite simply does not agree with this interpretation. First, to the extent that an appellate court in the Commonwealth were to acknowledge the viability of a new common law claim, most assuredly that claim would be directly raised and addressed as the subject of the appeal. In this instance, the Appeals Court adverts to an equitable principle of common law in a footnote; there is no indication whatsoever that the defendant landlords had asserted a counterclaim for "reverse bad faith" in the *Parker* case. Certainly, the Appeals Court made no pronouncement that it was recognizing a heretofore unknown cause of action. The Court neither set forth the elements of any such claim nor explained what damages could be recovered if a party was successful in proving such a claim. From all that appears, the Court seems to be noting that when examining all the attendant circumstances, it is important that the defendants' conduct not be viewed in a vacuum, but rather that plaintiff's conduct also be considered.

Next, it should also be remarked that the two cases cited by the Appeals Court in footnote 9 are factually distinct from the instant situation. Both the *Twin City* and the *Transit* cases involved claims asserted by and between insureds, their primary insurance carriers, and their excess insurance carriers. The plaintiffs in this case are not the insureds of Liberty Mutual; rather, they are claimants injured by the insureds of the defendant.

■ Finally, even if the *Parker* case could be said to establish a new common law cause of action, it is not at all clear that the facts alleged by the defendant would fall within the contours of such a claim. The Appeals Court stated that the plaintiff must be forth-

coming with information so that the defendant can realistically evaluate the case. There is no allegation in Liberty Mutual's proposed counterclaim that the plaintiffs failed to provide the insurance company with pertinent facts and information. What the defendant does allege is that the plaintiffs' failure timely to make a demand, their refusal to negotiate "realistically", and their actions both in filing a complaint against an entity known to be in bankruptcy and, thereafter, seeking a default judgment against that entity, all constitute "reverse bad faith." These allegations are not related to any purported failure on the part of the plaintiffs that somehow hampered the ability of Liberty Mutual to evaluate the merits of their claims. Again, while this alleged conduct by the plaintiffs may well be relevant in the context of the defendant's affirmative defense, it does not appear to be in the nature of the conduct described by the Appeals Court.

### V. CONCLUSION AND ORDER

For all the reasons stated, I rule that Count I of the proposed counterclaim fails to state a claim under Massachusetts law and that, therefore, the proposed amendment is futile. Accordingly, it is ORDERED that the defendant's Motion To Amend Answer To Add Counterclaim (# 112) be, and the same hereby is, DENIED.